IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH A. SOUFL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 22-553 |
| ) | |
| KILOLO KIJAKAZI, ) | |
| *Acting Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |

O R D E R

AND NOW, this 28th day of August, 2023, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153-54 (2019); *Jesurum v. Secretary of U.S. Dep't of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)). *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff's underlying argument is that the Administrative Law Judge ("ALJ") failed to consider the record as a whole and choose to discuss only certain parts of the evidence in making his findings. As part of that argument, he avers that the ALJ improperly assessed the medical opinion evidence, giving more weight to the earlier opinions of the state agency reviewers than to the later opinions of his treating medical professionals. The Court disagrees and finds that the ALJ properly considered the record evidence, including the medical opinion evidence.

The ALJ considered several medical opinions in this case. He found the opinions (*i.e.*, prior administrative findings) of three of the state agency reviewers to be persuasive (R. 23-25), including the August 4, 2020 opinion of Kerry Vaughn Brace, Psy.D. (R. 84-85, 90-91), the January 21, 2020 opinion of Nghia Van Tran, M.D. (R. 72-74), and the July 27, 2020 opinion of Margel C. Guie, D.O. (R. 85-89). The ALJ found the January 2, 2020 opinion of consultative examiner Debra Davis, N.P. (R. 854-71), to be persuasive in part and not persuasive in part. (R. 24-25). He found a fourth state reviewing agent opinion – the January 17, 2020 opinion of Melissa Franks, Psy.D., that Plaintiff had no severe mental impairments (R. 70-71) – to be unpersuasive because it was issued before the admission of additional evidence that established that Plaintiff's symptoms were more serious than Dr. Franks opined them to be. (R. 24). He found the October 19, 2020 opinion of Donna Sheetz, PA-C (R. 902-05) to be unpersuasive. (R. 22-23). The remaining two "opinions," those of ophthalmologist John Missry, M.D. (R. 1150-52), and neuropsychological medical consultant Rebecca Wiegers, Ph.D. (R. 889-92), will be addressed later in this order.

The three state agency opinions found by the ALJ to be persuasive were generally supportive of the RFC. The ALJ's rejection of Dr. Franks' opinion was to Plaintiff's benefit as it was based on his finding that Dr. Franks understated Plaintiff's symptoms because she lacked later evidence. Nurse Practitioner ("NP") Davis' opinion was generally consistent with the RFC determination except for her opinion that Plaintiff could only walk 2 hours and stand 2 hours out of an 8-hour workday. Ms. Sheetz's only relevant opinions as to Plaintiff's functional capacity were that he would be off task 25 percent or more of the time and miss more than four days of work per month, which the ALJ declined to incorporate into Plaintiff's residual functional capacity ("RFC"). Although Plaintiff suggests that the ALJ selectively considered the record in conducting this analysis, for the most part he is simply offering his own interpretation of the record in place of the ALJ's.

Plaintiff does also assert that the opinions of the state agency reviewers were issued without the benefit of the full record as it existed at the time of the administrative hearings. However, the fact that the state reviewing agents' and consultative examiner's opinions were rendered before other evidence became available does not mean the ALJ was prohibited from finding them to be persuasive. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."). It is noteworthy that the state agency opinions all postdate NP Davis' report, and, in fact, that report was considered by the reviewing agents. Ms. Sheetz's opinion postdates the last of the reviewing agents' reports by only a few months, and Plaintiff does not identify with any specificity what evidence from that time lapse would have led to any different conclusions. There is also no indication that Ms. Sheetz was familiar with the entire existing record when she rendered that opinion.

Moreover, while there was later evidence to which the state reviewing agents had no access, the ALJ was aware of and expressly considered and discussed this evidence in evaluating the opinions and formulating the RFC. He, in fact, found Dr. Franks' opinion that Plaintiff had no severe mental impairments to be unpersuasive because she did not have access to later

evidence. This demonstrates that, far from rubber-stamping these opinions, the ALJ considered them in the context of the entire record.

As for Plaintiff's claim that the ALJ "cherry-picked" or relied on evidence from the record only selectively, it is clear that the ALJ discussed evidence both beneficial and detrimental to Plaintiff's claim. He mentioned, for example, Plaintiff's testimony that his back worsened after surgery; medical imagining records demonstrating disc herniation and spinal stenosis; evidence of radiculopathy, polyneuropathy, and neuropathy; and occasional abnormal clinical findings. (R. 21-23). An ALJ need not discuss every relevant treatment note in the record, let alone every aspect of each note, as long as the reviewing court can determine the basis for the decision. *See Fargnoli v. Massanari,* 247 F.3d 34, 42 (3d Cir. 2001); *Tisoit v. Barnhart*, 127 Fed. Appx. 572, 575 (3d Cir. 2005). Nothing here suggests that the ALJ did not consider the relevant records in their entirety. *See Rios v. Comm'r of Soc. Sec.*, 444 Fed. Appx. 532, 535 (3d Cir. 2011) (remand not warranted where ALJ was not cherry-picking or ignoring medical assessments that ran counter to her finding).

For instance, in regard to NP Davis' opinion that Plaintiff was limited to standing 2 hours and walking 2 hours out of an 8-hour workday, the ALJ clearly explained why he found this opinion to be less persuasive than those providing that Plaintiff could stand and walk more than that, citing specific record evidence in support of this finding. As Defendant points out, the ALJ did not reject NP Davis' opinion outright, and, indeed, the RFC ultimately formulated by the ALJ is in some ways more limited than her opinion. Further, the ALJ explained why he found PA-C Sheetz's opinion regarding off-task time and absences to be lacking in support and inconsistent with the record. The Court further notes that it is questionable whether opinions as to how many days of work a claimant will miss or how often he or she will be off task truly constitute medical opinions in any event. *See Rush v. Comm'r of Soc. Sec.*, No. CV 18-10612, 2018 WL 6175374, at *3 (E.D. Mich. Oct. 5, 2018); *Long v. Berryhill*, No. 1:16-CV-485-CHS, 2018 WL 1162621, at *5 (E.D. Tenn. Mar. 5, 2018); *Stojic v. Comm'r of Soc. Sec.*, No. 1:14-CV-1133, 2015 WL 9238986, at *4 (W.D. Mich. Dec. 17, 2015) (stating that "predictions of how often Plaintiff would likely be off task and miss work were conjecture, not a medical opinion").

The ALJ and the parties all seem to treat Dr. Wiegers' July 30, 2020 neuropsychological assessment of Plaintiff as a medical opinion, but it is not clear that is how it is most accurately defined. According to the SSA's regulations, medical opinion evidence consists of a statement or statements "from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he] ha[s] one or more impairment-related limitations or restrictions in the abilities listed in paragraphs (a)(2)(i)(A) through (D)." 20 C.F.R. § 404.1513(a)(2). Evidence from a medical source that is neither an opinion nor objective medical evidence (*e.g.*, "medical signs" or "laboratory findings") is categorized as "Other medical evidence." *Id.* § 404.1513(a)(3). This category of evidence "includ[es] judgments about the nature and severity of [the claimant's] impairments, [his] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* Dr. Wiegers' neuropsychological assessment appears to fall into this category. She reported the results of testing primarily focused on Plaintiff's intelligence, comprehension skills, and memory but did not offer an opinion as to what Plaintiff can still do despite his impairments. The closest she came to doing so was making the

vague statement that certain of Plaintiff's conditions have had a negative impact on his ability to pursue competitive employment. (R. 892). The assessment contained no specific opinions as to how Plaintiff's cognitive impairments would impact his functional capacity.

Regardless, even if Dr. Wiegers' assessment were deemed to be an opinion pursuant to Section 404.1513, Plaintiff has not suggested what additional restrictions should have been included in the RFC to account for the test results reported in the assessment. It is important to remember that the issue is not the nature of Plaintiff's diagnosis, but what functional limitations his conditions caused. *See Walker v. Barnhart*, 172 Fed. Appx. 423, 426 (3d Cir. 2006). Here, the ALJ found that one of Plaintiff's severe impairments was borderline intellectual functioning (R. 18), and the RFC as crafted by the ALJ was already quite restrictive in regard to Plaintiff's mental functional capacity, limiting him to work requiring the ability to understand, remember, and carry out only simple instructions; involving only occasional interactions with the public, supervisors, and coworkers; and allowing only one or two work changes per week to an otherwise stable work routine. (R. 20). As noted above, Dr. Wiegers did not suggest any specific limitations to add to this list, nor does Plaintiff specify what they might be. Accordingly, whether treated as a medical opinion or simply as "other medical evidence," the ALJ sufficiently accounted for July 30, 2020 neuropsychological assessment.

The Court is somewhat confused at the purported relationship between Dr. Wiegers' assessment and Dr. Missry's opinion. Dr. Wiegers does not appear to have offered any opinion as to Plaintiff's visual acuity, nor did she invalidate any results based on Plaintiff's vision. Rather, she simply reported that Plaintiff complained of blurry vision, and stated that such vision problems may have negatively impacted some of the test results. (R. 890). It appears that Plaintiff was then sent to Dr. Missry to confirm the nature of his vision problems. While Dr. Missry did report poor vision in Plaintiff's right eye, leading to several suggested functional limitations, he stated that Plaintiff's left eye vision was "very good." (R. 25, 1152). The ALJ relied upon this finding to discredit Dr. Wiegers' assessment, stating that her opinion "was severely undercut by her willingness to assume visual flaws not in evidence." (R. 25). The ALJ further asserted that "Dr. Missry's findings confirm the claimant was able competently to perform Dr. Wiegers['] cognitive testing, yet did not do so." (*Id.*).

The Court certainly finds the ALJ's determination that Dr. Missry's opinion was persuasive to be adequately explained and supported by substantial evidence. However, it is not clear that his findings undercut those of Dr. Wiegers. Dr. Missry confirmed that Plaintiff did have some vision issues resulting from corneal scarring, which is not necessarily inconsistent with Plaintiff's complaint of blurred vision during his appointment with Dr. Wiegers. Likewise, a finding that Plaintiff's left eye vision was very good does not necessarily disprove blurred vision on the date of Plaintiff's testing with Dr. Wiegers. Further, Dr. Wiegers was not purporting to make any findings regarding Plaintiff's vision and did not invalidate the test scores because of any vision issues. She merely stated that impact was a possibility. It is not clear to the Court, therefore, why the ALJ found Dr. Missry's opinion to so thoroughly undermine that of Dr. Wiegers.

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 10) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 12) is GRANTED as set forth herein.

                                               s/Alan N. Bloch
                                               United States District Judge

ecf:        Counsel of record

---

Regardless, as discussed above, Dr. Wiegers does not suggest any functional limitations beyond what was already included in the RFC. Thus, whether the ALJ found her assessment to be persuasive or not does not impact the ALJ's RFC findings. Ultimately, his findings were not inconsistent with Dr. Wiegers' report.

For the most part, Plaintiff is simply asking the Court to reweigh the evidence and reach its own conclusion. However, if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently. *See Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); *Berry*, 738 F. Supp. at 944 (*citing Cotter*, 642 F.2d at 705). Moreover, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 764 (3d Cir. 2009). The Court finds here that substantial evidence does support the ALJ's decision and, therefore, it will affirm.